No. 17-1987

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

UNITED STATES ex rel. FREEDOM UNLIMITED, INC; NORTHSIDE
COALITION FOR FAIR HOUSING, INC.; THE HILL DISTRICT CONSENSUS
GROUP, INC.; and FAIR HOUSING PARTNERSHIP OF GREATER
PITTSBURGH, INC.,

Plaintiffs-Appellants,

v.

CITY OF PITTSBURGH and LUKE REVENSTAHL,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 2:12-cv-1600)

———————————

BRIEF FOR UNITED STATES
AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY

———————————

CHAD A. READLER
  *Acting Assistant Attorney General*
SOO C. SONG
  *Acting United States Attorney*
MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
NICOLAS Y. RILEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7231*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4814*

# TABLE OF CONTENTS

**Page**

INTRODUCTION & STATEMENT OF INTEREST ................................................. 1

STATEMENT OF THE CASE ...................................................................... 3

    A. Statutory and Regulatory Background .................................................. 3

        1. The False Claims Act .................................................................. 3

        2. The Community Development Block Grant Program .............. 3

        3. The HOME Investment Partnership Program .......................... 5

    B. Factual and Procedural Background ...................................................... 5

ARGUMENT ...................................................................................... 9

IN LIGHT OF *ESCOBAR*, THIS COURT SHOULD CLARIFY ITS STANDARD FOR
DETERMINING WHEN A DEFENDANT MAY BE HELD LIABLE UNDER THE FCA
FOR FALSELY CERTIFYING COMPLIANCE WITH A STATUTORY, REGULATORY, OR
CONTRACTUAL REQUIREMENT. .......................................................... 9

    A.    *Escobar* rejected the distinction between "conditions of
           payment" and "conditions of participation." ............................... 10

    B.    *Escobar* instructs courts to focus on whether a defendant's
           false certification was "material" to the government's
           payment decision .......................................................................... 12

    C.    The factors the district court considered are not relevant
           under *Escobar*'s materiality standard ......................................... 14

CONCLUSION .................................................................................. 17

COMBINED CERTIFICATIONS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                  <u>**Page(s)**</u>

*United States ex rel. Hutcheson v. Blackstone Med., Inc.,*
  647 F.3d 377 (1st Cir. 2011) ............................................................................ 11

*United States ex rel. Johnson v. Golden Gate Nat'l Senior Care, LLC,*
  No. 08-1194, 2016 WL 7197373 (D. Minn. Dec. 9, 2016) .......................................... 12

*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 495,*
  688 F.3d 410 (8th Cir. 2012) ....................................................................... 15, 16

*United States ex rel. Scutellaro v. Capitol Supply, Inc.,*
  No. 10-1094, 2017 WL 1422364 (D.D.C. Apr. 19, 2017) .......................................... 12

*United States v. Neifert-White Co.,*
  390 U.S. 228 (1968) ..................................................................................... 16

*Universal Health Services, Inc. v. United States ex rel. Escobar,*
  136 S. Ct. 1989 (2016) ............................................. 2, 9, 10, 11, 12, 13, 14, 15

*United States ex rel. Wilkins v. Universal Health Group, Inc.,*
  659 F.3d 295 (3d Cir. 2011) ........................................................... 7, 10, 11, 15

**Statutes:**

31 U.S.C. § 3729(a) .......................................................................................... 3

31 U.S.C. § 3729(b) ..................................................................................... 12, 13

31 U.S.C. § 3730(b) .......................................................................................... 3

31 U.S.C. § 3730(e) ....................................................................................... 6, 7

42 U.S.C. § 5301 ........................................................................................... 3, 4

42 U.S.C. § 5302 ............................................................................................. 4

42 U.S.C. § 5304 .......................................................................................... 4, 5

42 U.S.C. § 5305 ................................................................................................ 4

42 U.S.C. § 5306 ......................................................................................... 4, 14

42 U.S.C. § 12705 ............................................................................................ 5

42 U.S.C. § 12746 ............................................................................................ 5

**Regulations:**

24 C.F.R. pt. 91 .............................................................................................. 16

24 C.F.R. § 91.105 ....................................................................................... 4, 5

24 C.F.R. § 91.225 ....................................................................................... 4, 5

24 C.F.R. § 92.1 ............................................................................................... 5

24 C.F.R. §§ 570.201-.207............................................................................... 4

24 C.F.R. § 570.601 ........................................................................................ 5

**Other Authority:**

26 R. Lord, Williston on Contracts (4th ed. 2003) ...................................... 13

Restatement (Second) of Torts ...................................................................... 13

Restatement (Second) of Contracts................................................................ 13

## INTRODUCTION & STATEMENT OF INTEREST

The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, is the federal government's primary tool to combat fraud and recover losses due to fraud in federal programs. Some FCA cases are brought and litigated by the United States itself. Others, like this case, are brought by private citizens or organizations—known as relators—who litigate on behalf of the government after the government has declined to participate in a case itself. Even in cases where the United States has declined to participate, and even in cases that have little likelihood of success, the United States has a significant interest in ensuring that courts properly construe the FCA. Indeed, many important legal issues arise in actions brought by relators that have direct implications for the government's ability to recover in a broad range of FCA cases, including cases that the government itself brings.

One of those issues concerns the standard that courts apply in determining whether a defendant may be held liable for falsely certifying that it has complied with particular statutory, regulatory, or contractual requirements. In this case, relators allege that the City of Pittsburgh falsely certified compliance with certain regulatory requirements under various federal grant programs. The district court held that the City's alleged misrepresentations were not actionable under the FCA because they concerned general "conditions of participation" in the grant programs, rather than specific "conditions of payment." The district court viewed this distinction, which it

derived from this Court's case law, as the standard for determining whether an FCA

defendant may be held liable under a "false certification" theory.

That standard has been displaced by the Supreme Court's recent decision in

*Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).  As

explained below, *Escobar* explicitly rejected the distinction between "conditions of

payment" and "conditions of participation" that the district court relied on in this case

and that this Court has relied on in the past.  Instead, *Escobar* instructs courts to

engage in a more holistic analysis of the relevant statutory, regulatory, or contractual

requirements to determine whether a defendant's non-compliance with those

requirements would have been "material" to the government's payment decision.

Thus, in reviewing the district court's decision in this case, this Court should apply

*Escobar*'s "materiality" framework, rather than the now-obsolete "conditions of

payment" standard.

The United States takes no position on the merits of relators' claims in this

case.  Nor does it express any views on the applicability of the public-disclosure bar

here.  Rather, the United States submits this brief to urge the Court to revise its

approach to assessing materiality in false-certification cases in light of *Escobar*'s recent

guidance.

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

#### 1.  The False Claims Act

The False Claims Act (FCA) is "the Government's primary litigative tool" for combatting fraud.  S. Rep. No. 99-345, at 2 (1986).  The statute prohibits "any person" from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" to the federal government.  31 U.S.C. § 3729(a)(1).  It also prohibits "knowingly mak[ing], us[ing], or caus[ing] to be used, a false record or statement material to a false or fraudulent claim."  *Id.*  Anyone who violates the statute is liable to the United States for civil penalties plus three times the amount of the government's damages.  *Id.* § 3729(a).

Suits under the FCA may be brought by either the Attorney General or a private relator on behalf of the United States.  When the suit is filed by a relator, the United States is given an opportunity to review the relator's allegations and intervene in the suit, if it chooses.  *See* 31 U.S.C. § 3730(b).  If the United States declines to intervene, the relator may "conduct the action" on his or her own.  *Id.* § 3730(b)(4).

### 2.  The Community Development Block Grant Program

The Community Development Block Grant (CDBG) program provides funding to states and municipalities to develop "viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income."  42 U.S.C.

3

§ 5301(c).  "Metropolitan cities," including the City of Pittsburgh, are "entitlement"
jurisdictions and receive annual CDBG funding in accordance with a statutorily
determined formula.  42 U.S.C. §§ 5302(a)(4), 5306(b)(1).

Grantee jurisdictions generally have wide discretion over how to spend their
CDBG funds.  For example, grantees may use CDBG funds to acquire blighted real
property, construct public facilities, or provide certain public services.  *See* 42 U.S.C.
§ 5305(a) (enumerating eligible activities); 24 C.F.R. §§ 570.201-570.206 (same).
Grantees may not, however, spend CDBG funds on activities that are not authorized
by statute or regulation.  *See* 24 C.F.R. § 570.207 (listing examples of ineligible
activities).  And grantees are expressly barred from spending CDBG funds on political
activities or ordinary local-government projects, such as repairing government
buildings.  *See id.* § 570.207(a)(1)-(3), (b)(2).  The Department of Housing and Urban
Development (HUD), which administers the CDBG program, has identified several
examples of "ineligible operating and maintenance expenses," including the
"[m]aintenance and repair of publicly owed streets" and "the filling of pot holes."  *Id.*
§ 570.207(b)(2)(i).

In order to receive CDBG funding, grantees must undertake certain measures
to promote civic engagement and fair housing.  As relevant here, each grantee must
"certif[y] that it is following a detailed citizen participation plan which," *inter alia*,
"provides citizens with reasonable and timely access to local meetings, information,
and records relating to the grantee's proposed use of funds."  42 U.S.C.

4

§ 5304(a)(3)(B); *see also* 24 C.F.R. §§ 91.105, 91.225(b)(1) (establishing requirements

for citizen-participation plans and requiring certification). Similarly, each grantee

must certify that it will "affirmatively further fair housing" by complying with various

requirements set forth in HUD regulations. 42 U.S.C. § 5304(b)(2); *see* 24 C.F.R.

§§ 91.225(a)(1), 570.601(a)(2) (implementing fair-housing certification requirement).

### 3.  The HOME Investment Partnership Program

The HOME Investment Partnerships program provides block grants to state

and local governments to support the construction, purchase, and rehabilitation of

affordable housing. *See* 42 U.S.C. §§ 12741 *et seq.*; 24 C.F.R. §§ 92.1 *et seq.*

Participating jurisdictions are required to submit a "housing strategy" to HUD that,

among other things, "include[s] a certification that the jurisdiction will affirmatively

further fair housing." 42 U.S.C. § 12705(b)(15); *see also id.* § 12746(5)-(7)

(incorporating section 12705's requirements to the HOME program).

### B.  Factual and Procedural Background

**1.**  Relators are a group of nonprofit community development organizations

based in Pittsburgh. In 2012, they brought this suit alleging that the City of

Pittsburgh had violated the FCA by falsely certifying compliance with various

regulatory requirements under the CDBG and HOME programs. A72. After the

United States declined to intervene, relators amended their complaint to allege that

the City falsely certified compliance—both impliedly and expressly—with three sets

of HUD regulations.

First, relators allege that the City "annually, but falsely, certified" that it was "acting to affirmatively further fair housing." A79-A80. Relators assert, in particular, that the City failed to comply with HUD regulations requiring the City to eliminate certain barriers to fair housing and failed to carry out certain fair-housing projects that it had promised HUD it would undertake. *See* A89-A95.

Second, relators allege that the City "annually, but falsely, certified" that it "maintain[s] and follow[s] a current citizen participation plan." A80. Relators contend that the City failed, among other things, to notify the public how CDBG funds were being used and failed to adequately involve citizens in the decision-making process. *See* A97-A102.

Third and finally, relators allege that the City "annually, but falsely, certified" its compliance with restrictions on the activities for which CDBG funds may be used. A80. Specifically, relators assert that the City used millions of dollars of CDBG funds annually to pay for "regular governmental responsibilities," including street repaving and infrastructure repair. *See* A100-A104.

**2.** The district court dismissed relators' complaint in March 2016. The court first held that two of relators' claims—namely, the claims concerning the City's fair-housing and ineligible-spending certifications—were precluded by the FCA's public-disclosure bar. *See* A23-A51; *see generally* 31 U.S.C. § 3730(e)(4) (directing a court to dismiss a claim if it rests on "allegations or transactions" that have previously been

6

"publicly disclosed"). The court then proceeded to hold that all three claims failed on the merits. *See* A51-A66.

In dismissing the claims on the merits, the district court relied principally on this Court's decision in *United States ex rel. Wilkins v. Universal Health Group, Inc.*, 659 F.3d 295 (3d Cir. 2011). *See* A53-A55 (citing *Wilkins*, 659 F.3d at 309). In *Wilkins*, this Court drew a distinction between a defendant's failure to comply with "conditions of *participation*" in a regulatory program (which, it held, was not actionable under the FCA) and a defendant's failure to comply with "conditions of *payment*" (which, it held, was actionable). *See Wilkins*, 659 F.3d at 309 (emphases added). Relying on that distinction, the district court here held that the regulatory requirements underlying relators' claims were conditions of participation and, as such, were not actionable under the FCA. A59.

The district court offered four reasons to explain why the City's alleged false certifications in this case did not concern conditions of payment. First, the court noted that "the statutory and regulatory provisions advanced by plaintiff repeatedly call for compliance to a degree that is *satisfactory* to the Secretary [of HUD]," as opposed to requiring perfect compliance. A59 (emphasis added). Second, the court emphasized "the complexity and breadth of the programs and the numerous goals to be accomplished," which the court read to suggest that grantees would "almost assure[dly] . . . face various instances of non-compliance from time-to-time." A60. Third, the court reasoned that "HUD has established extensive administrative

7

mechanisms for managing and correcting deficient performances and noncompliance

violations, which include remedies for violations other than the withholding or

repayment of grant funding." A61. And fourth, the court noted that the regulatory

scheme "reflect[s] separate considerations for entitlement communities such as the

city," including a "forward-looking approach as to corrective measures." A62. These

considerations, the court concluded, suggested that the City's allegedly false

certifications should be construed as misrepresentations concerning "conditions of

participation," rather than "conditions of payment." *See* A62.

**3.** Relators moved for reconsideration of the district court's order of dismissal

in April 2016. A2429-A2441. The following month, the government filed a

statement of interest supporting relators' motion. A2452-A2468. The government

argued that the district court had erred by dismissing relators' claims based on the

purported distinction between "conditions of payment" and "conditions of

participation." Although the government did not take a position on the merits of

relators' allegations, it argued that the allegations—if true—would support liability

under a "false certification" theory.

The district court denied the motion for reconsideration in March 2017. A68-

A71. Although the court did "not disagree with any of the principles of law set forth

in the statement of interest filed by the United States," it nevertheless concluded that

those principles were not tailored to the "intricate and complex setting" in which

relators' claims arose. A69. The court's order did not cite or discuss the Supreme

8

Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which was decided after briefing was complete.

## ARGUMENT

### IN LIGHT OF *ESCOBAR*, THIS COURT SHOULD CLARIFY ITS STANDARD FOR DETERMINING WHEN A DEFENDANT MAY BE HELD LIABLE UNDER THE FCA FOR FALSELY CERTIFYING COMPLIANCE WITH A STATUTORY, REGULATORY, OR CONTRACTUAL REQUIREMENT.

It is firmly settled that the False Claims Act imposes liability on someone who submits a claim for payment to the government that falsely certifies—implicitly or explicitly—that he or she complied with some statutory, regulatory, or contractual requirement "material" to the government's payment decision. The question in this case is what standard courts should apply in determining whether such a false certification is "material" to the government's payment decision.

The Supreme Court answered that question in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), by instructing courts to focus on whether the false certification is capable of influencing the government decision-maker. *Id.* at 2002. That standard displaced the various tests that lower courts had previously used to assess "materiality" in false-certification cases, including the "conditions of payment" test used in this Circuit. Accordingly, in light of *Escobar*, this Court should revisit and revise its prior framework for evaluating the materiality of a defendant's non-compliance with a statutory, regulatory, or contractual requirement.

9

### A. *Escobar* rejected the distinction between "conditions of payment" and "conditions of participation."

As previously noted, the district court dismissed relators' claims based on a distinction between "conditions of participation" and "conditions of payment." It derived that distinction from this Court's statement in *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295 (3d Cir. 2011), that "[i]n determining whether compliance with a regulation was a condition of payment from the Government, courts have distinguished between regulations which are conditions of participation in the Medicare programs and conditions of Government payment of Medicare funds." *Id.* at 309. The district court relied on this dichotomy in holding that the regulations that the City allegedly violated here merely constituted "conditions of participation" rather than "conditions of payment." *See* A53-A55.

Shortly after the district court dismissed relators' claims in this suit, the Supreme Court issued its decision in *Escobar*. There, the Court reaffirmed that a "defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements" may give rise to liability under the FCA. 136 S. Ct. at 2001. In reaching that conclusion, the Court made clear that such omissions can be actionable even if the applicable statutory, regulatory, or contractual requirement was not "expressly designated a condition of payment." *Id.*; *see also id.* at 1996 ("False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of

10

payment.").  The Court reasoned that it would be arbitrary to limit FCA liability to

misrepresentations concerning "conditions of payment" because such an approach

would exclude "misrepresent[ations] of compliance with a *condition of eligibility to even*

*participate in a federal program.*"  *Id.* at 2002 (emphasis added).  In short, *Escobar*

recognized that threshold eligibility requirements—i.e., "conditions of

participation"—can be just as material to the government's payment decision as

express conditions of payment.[1]

The Supreme Court's rejection of the distinction between "conditions of

payment" and "conditions of participation" effectively overturned the standard this

Court adopted in *Wilkins*.  Although *Escobar* did not discuss *Wilkins* specifically, it did

cite the standards applied by the Second and Tenth Circuits—both of which *Wilkins*

relied on—as examples of the approach it was rejecting.  136 S. Ct. at 1999.  Thus,

while *Escobar* reaffirmed *Wilkins*'s holding that a defendant's failure to comply with

certain statutory, regulatory, or contractual requirements may violate the FCA, *Escobar*

also made clear that those requirements need not be express "conditions of payment"

---

[1]  Some courts distinguish between "claims rendered legally false or fraudulent
by an 'express certification' and claims rendered legally false or fraudulent by an
'implied certification.'"  *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d
377, 385 (1st Cir. 2011).  While *Escobar* was an "implied" false-certification case, its
rejection of the distinction between "conditions of payment" and "conditions of
participation" applies equally to cases involving "express" false certification.  As noted
above, relators in this case have asserted claims relying on both implied and express
theories of false certification.

to trigger FCA liability.  This Court should therefore revise the approach it adopted

for assessing false-certification liability in *Wilkins* to ensure that it comports with

*Escobar*.[2]

### B. *Escobar* instructs courts to focus on whether a defendant's false certification was "material" to the government's payment decision.

Not unlike the present case, *Escobar* involved an allegation that the defendant

had falsely certified its compliance with certain federal regulations.  To determine

whether the defendant's non-compliance with those regulations violated the FCA, the

Supreme Court explained that the touchstone is whether the defendant's non-

compliance, if discovered, would have been "material to the Government's payment

decision."  136 S. Ct. at 2002.

The Supreme Court then outlined how this "materiality requirement should be

enforced" in practice.  136 S. Ct. at 2002.  The Court began with the FCA's statutory

definition of materiality—"having a natural tendency to influence, or be capable of

---

[2]  Several district courts have concluded that *Escobar* fatally undermines the distinction between "conditions of participation" and "conditions of payment."  *See United States ex rel. Johnson v. Golden Gate Nat'l Senior Care, LLC*, No. 08-1194, 2016 WL 7197373, at *5, *7 (D. Minn. Dec. 9, 2016) (reasoning that after *Escobar*, "FCA liability is not limited to violations . . . that the Government labels as 'conditions of payment,' as opposed to 'conditions of participation,'" and emphasizing that the "distinction between [the two] is not dispositive of the FCA's materiality requirement"); *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094, 2017 WL 1422364, at *20 n.25 (D.D.C. Apr. 19, 2017) (interpreting *Escobar* as "affirm[ing] the law in the D.C. Circuit, which had already rejected the distinction between 'conditions of payment' and 'conditions of participation'").

influencing, the payment or receipt of money or property," 31 U.S.C. § 3729(b)(4)—

and stressed that this was the same definition employed in "other federal fraud

statutes," which came from "common-law antecedents." *Id.* The Court noted that

the basic concept of materiality is the same in all of these contexts, focusing upon

"the effect on the likely or actual behavior of the recipient of the alleged

misrepresentation." *Id.* (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549

(4th ed. 2003)). Citing tort and contracts principles, the Court explained that a matter

is material if: (1) a reasonable person would attach importance to it in determining a

choice of action in the transaction, or (2) the defendant knew or had reason to know

that the recipient of the representation attaches importance to the specific matter in

determining his choice of action, regardless whether a reasonable person would do so.

136 S. Ct. at 2002-03 (citing Restatement (Second) of Torts § 538, at 80; Restatement

(Second) of Contracts § 162(2), and Comment c, at 439, 441).

The Court made clear that this inquiry is holistic and must take a variety of

factors into account. *See* 136 S. Ct. at 2001 (noting that "materiality cannot rest on 'a

single fact or occurrence as always determinative'" (citation omitted)). One relevant

factor is "the Government's decision to expressly identify a provision as a condition

of payment," which the Court viewed as "relevant, but not automatically dispositive."

136 S. Ct. at 2003. Other factors include whether the violation is significant or

"minor or insubstantial," *id.*, whether the violation goes to the "essence of the

bargain," *id.* at 2003 n.5 (citation omitted), and what actions the government took in

this or other cases where the government had "actual knowledge" of similar

violations, *id.* at 2003-04. Taken together, these factors establish that the materiality

of a defendant's non-compliance with a statutory, regulatory, or contractual

requirement ultimately depends upon the capacity of the violation to affect the

government decision-maker.

### C. The factors the district court considered are not relevant under *Escobar*'s materiality standard.

Notably, the factors the Supreme Court identified as relevant to the materiality

inquiry in *Escobar* did not include any of the four considerations the district court

highlighted in this case. If anything, *Escobar* suggests that those considerations have

little bearing on the ultimate question of materiality.

First, the district court's view that the relevant "statutes and regulations . . .

stop short of reflecting an actual condition of payment" because they only require

compliance "to the satisfaction of the [HUD] Secretary," A59 (quoting 42 U.S.C.

§ 5306(b)(2)), is not supported by any legal authority and has no basis in the text of

the FCA. Nor is the statutory and regulatory language the district court cited unique:

all regulatory certifications must necessarily be made to the satisfaction of the agency.

That Congress made that requirement explicit here does nothing to lessen the

significance of the grantee's underlying regulatory obligations.

Second, the district court's conclusion that "the complexity and breadth of the

[CDBG and HOME] programs" would "almost assure[dly] . . . face various instances

of non-compliance from time-to-time," A60, rests on a similarly mistaken premise.  It

is true that *Wilkins* relied on similar reasoning in holding that violations of Medicare

marketing regulations were not actionable under the FCA.  *See* 659 F.3d at 310 ("[W]e

think that anyone examining Medicare regulations would conclude that they are so

complicated that the best intentioned plan participation could make errors in

attempting to comply with them.").  But the FCA contains no special exemption for

unusually complicated statutory schemes.  And to the extent the district court was

concerned about open-ended liability under the FCA, *Escobar* specifically addressed

that prospect with respect to the complex state Medicaid regulatory scheme.  As the

Court explained, policy concerns about liability for minor or inadvertent regulatory

violations—such as the district court's fear here of "reading the FCA in a manner that

would make every violation of a complex regulatory scheme into a fraud claim,"

A60—are best "addressed through strict enforcement of the [FCA's] materiality and

scienter requirements." *Escobar*, 136 S. Ct. at 2002.  In other words, *Escobar*

encourages courts to evaluate materiality on a case-by-case basis, rather than by

fashioning broad rules.

Third, the district court's emphasis on HUD's "administrative mechanisms for

managing and correcting deficient performances and noncompliance violations" is

also misplaced.  A61.  Congress, in enacting the FCA, did not create an exception to

liability for the many instances where a parallel administrative enforcement scheme

exists.  On the contrary, "Congress intended to allow the government to choose

15

among a variety of remedies, both statutory and administrative, to combat fraud."
*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 495*, 688 F.3d 410, 414-15
(8th Cir. 2012) (quotation marks omitted); *see also United States v. Neifert-White Co.*, 390
U.S. 228, 232 (1968) ("[T]he [FCA] was intended to reach all types of fraud, without
qualification, that might result in financial loss to the government.").  Indeed, the fact
that an agency has exercised its administrative enforcement discretion in the past
underscores that a certain violation may be material.  To the extent that *Wilkins* and
other cases suggest differently, their reasoning does not survive *Escobar*'s clarification
that courts can address the outer bounds of FCA liability by enforcing the materiality
and scienter requirements—not by creating atextual exceptions to FCA liability for
participants in specific grant programs.

Finally, the district court's statement that the CDBG scheme "reflect[s]
separate considerations for entitlement communities" rests on the same basic error.
A62.  The discretion available to government regulators to fashion administrative
remedies, and to determine whether those remedies should apply on a prospective
basis, does not preclude FCA claims for the same conduct.  Nor does the City's status
as an "entitlement" jurisdiction preclude FCA liability.  In fact, the City's right to
continued funding under the CDBG program is expressly conditioned on compliance
with material program requirements.  *See* 24 C.F.R. pt. 91.

In sum, the factors that the district court relied on in this case are largely
untethered from those that the Supreme Court directed courts to consider in *Escobar*.

For that reason, this Court should use this case as an opportunity to clarify its standard for assessing materiality in false-certification cases.  Furthermore, in clarifying that standard, the Court should make clear that the central question is not whether the defendant failed to comply with some express "condition of payment" but, rather, whether the defendant failed to comply with any requirement capable of influencing the government's payment decision.

## CONCLUSION

For the foregoing reasons, this Court should revisit and revise its standard for determining when a False Claims Act defendant may be held liable under a "false certification" theory, as explained above.

Respectfully submitted,

CHAD A. READLER
*Acting Assistant Attorney General*

SOO C. SONG
*Acting United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 */s/ Nicolas Y. Riley*
NICOLAS Y. RILEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4814*
*nicolas.y.riley@usdoj.gov*

AUGUST 2017

17

## COMBINED CERTIFICATIONS

1.  Government counsel are not required to be members of the bar of this Court.

2.  This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because it contains 3,985 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

3.  On August 9, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

4.  The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5.  This document was scanned for viruses using Symantec Endpoint Protection, Version 14, and no virus was detected.

*/s/ Nicolas Y. Riley*
NICOLAS Y. RILEY

**ADDENDUM**

# TABLE OF CONTENTS

31 U.S.C. § 3729 ................................................................................................................ A1

**31 U.S.C. § 3729.   False claims.**

**(a) Liability for certain acts.--**

**(1)** In general.--Subject to paragraph (2), any person who--

**(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

**(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

**(C)** conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

**(D)** has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

**(E)** is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

**(F)** knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

**(G)** knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

**(2)** Reduced damages.--If the court finds that--

**(A)** the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

**(B)** such person fully cooperated with any Government investigation of such violation; and

**(C)** at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation,

the court may assess not less than 2 times the amount of damages which the Government sustains because of the act of that person.

**(3)** Costs of civil actions.--A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

## (b) Definitions.--For purposes of this section--

**(1)** the terms "knowing" and "knowingly" --

    **(A)** mean that a person, with respect to information--

        (i)  has actual knowledge of the information;

        (ii)  acts in deliberate ignorance of the truth or falsity of the information; or

        (iii) acts in reckless disregard of the truth or falsity of the information; and

    **(B)** require no proof of specific intent to defraud;

**(2)** the term "claim"--

    **(A)** means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

        (i) is presented to an officer, employee, or agent of the United States; or

        (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

            (I) provides or has provided any portion of the money or property requested or demanded; or

            (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

A2

> **(B)**    does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property;

**(3)** the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

**(4)** the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

**(c) Exemption from disclosure.--** Any information furnished pursuant to subsection (a)(2) shall be exempt from disclosure under section 552 of title 5.

**(d) Exclusion.--** This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986..